IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00399-PAB-CBS

RUSSELL G. BENNING,
    Plaintiff,
v.

BRIAN WEBSTER, P.A.,
DR. J. FORTUNAT [sic], and
P.A. KATHERYN RITTENHOUSE,
    Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on: (1) Defendants' "Motion to Dismiss" (filed July 11, 2008) (doc. # 30); and (2) "Defendant Rittenhouse's Motion to Dismiss" (filed October 21, 2008) (doc. # 55). Pursuant to the Order of Reference dated May 15, 2008 (doc. # 19) and the memoranda dated July 14, 2008 (doc. # 31) and October 23, 2008 (doc. # 58), the Motions were referred to the Magistrate Judge. The court has reviewed the Motions, Mr. Benning's "Traverse" ("Response") (filed July 24, 2008) (doc. # 39), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.[1]

I.    Statement of the Case

At the time this civil action was filed, Mr. Benning was an inmate at the Sterling Correctional Facility ("SCF") in Sterling, Colorado. (*See, e.g.*, Amended Complaint

---

[1] On October 24, 2008, the court directed Mr. Benning to file any response to Defendant Rittenhouse's Motion on or before November 20, 2008. (*See* Minute Order (doc. # 59)). To date, Mr. Benning has not filed a response to Defendant Rittenhouse's Motion.

1

(doc. # 10) at pp. 2, 14 of 14).[2] Proceeding *pro se*, Mr. Benning filed his initial Complaint in this civil action on or about March 5, 2008. (*See* doc. # 3). Pursuant to the court's direction (*see* doc. # 8), Mr. Benning filed his Amended Complaint on March 31, 2008. (*See* doc. # 10). Mr. Benning filed a "Second Amended Complaint" on April 29, 2008. (*See* doc. # 12 (apparently accepted and docketed by the Clerk of the Court as "Supplement/Amendment to Amended Complaint")). Thus, the operative pleading is Mr. Benning's Second Amended Complaint (doc. # 10 as modified by doc. # 12).[3]

In his Second Amended Complaint, Mr. Benning alleges one claim for relief pursuant to Title 42 U.S.C. § 1983 that he is being denied necessary medical care in violation of his rights under the Eighth and Fifth Amendments.[4] Mr. Benning alleges that he injured himself on August 7, 2006 when lifting a mop bucket while working as a porter at SCF. (*See* doc. # 10 at p. 5 of 14). Mr. Benning informed the correctional officer on duty and Defendant Webster, a Physician's Assistant, examined Mr. Benning the same morning. (*See id.*). Defendant Webster diagnosed a hernia. (*See id.*). On

---

[2] Mr. Benning has since been released from incarceration. (*See* doc. # 61 (notifying court of change of address to a Salvation Army shelter in Colorado Springs, Colorado)).

[3] An amended complaint supersedes the original complaint, rendering it of no legal effect and waiving all causes of action alleged in the original complaint but not alleged or incorporated into the amended complaint. *See Davis v. TXO Production Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) ("[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect") (internal quotations marks and citations omitted).

[4] It is unclear why Mr. Benning invokes the Fifth Amendment. The Due Process Clause of the Fifth Amendment protects against due process violations by the federal government. *See Public Utilities Comm'n v. Polak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons). As Mr. Benning is a state prisoner, his claim is properly analyzed under the due process clause of the Fourteenth Amendment. In the prison context, the Fourteenth Amendment's due process clause affords no greater protection to a litigant claiming mistreatment than does the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Thus, the court's review of Mr. Benning's Eighth Amendment claim fully disposes of any due process claim Mr. Benning has asserted for the same conduct.

the same day, Mr. Benning filed a grievance, requesting that "I should be seeing a specialist and obtain corrective surgery at Denver Health." (*See* doc. # 10 at p. 9 of 14). Mr. Benning alleges pursuant to 42 U.S.C. § 1983 that he is being denied proper medical care by the failure to surgically repair his hernia. As relief, Mr. Benning seeks declaratory and injunctive relief, compensatory damages, punitive damages, and "medical costs." (*See* doc. # 10 at p. 14 of 14; doc. # 12 at p. 2 of 2). All three of the Defendants have moved to dismiss the Second Amended Complaint for several reasons pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

II.     Standard of Review

Under Rule 12(b)(1), a motion to dismiss may be granted if the court does not have subject matter jurisdiction over the matter. In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. . . ." *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Because Mr. Benning appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007)

(citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

III.     Analysis

Section 1983 creates a cause of action where a "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

A.  Liability of Defendants in their Official Capacities

Mr. Benning is suing Defendants in both their individual capacities and their official capacities.  (*See* doc. # 10 at pp. 1-2 of 14; Response (doc. # 39) at p. 2 of 4).  To the extent that Mr. Benning is suing Defendants in their official capacities, he is actually attempting to impose liability on their employer, the State of Colorado.  *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment against a public servant in his official capacity imposes liability on the entity he represents"); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself").

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Absent considerations not present in this case, "the Eleventh Amendment forbids a suit for damages against a state in federal court."  *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citation omitted).  The Eleventh Amendment confers total immunity from suit, not merely a defense to liability.  *Ambus*, 995 F.2d at 994 (citation omitted).  Thus, any claim for money damages brought against Defendants in their official capacities under § 1983 is barred by the Eleventh Amendment and is properly dismissed with prejudice for lack of subject matter jurisdiction.  *See Fent v. Oklahoma Water Resources Bd.*, 235 F.3d 553, 559 (10th Cir. 2000) (Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction").

B.    Liability of Defendants in their Individual Capacities

The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 164 (1985). To the extent that Mr. Benning is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. *Graham*, 473 U.S. at 165-67.

1.    Eighth Amendment

The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104 (internal quotation marks and citation omitted). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

In order to assert an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, a plaintiff must demonstrate that he suffered objectively serious medical needs and that the prison officials actually knew of and deliberately disregarded those needs. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citation omitted). The standard encompasses two components: objectively, the medical needs must be sufficiently serious, and subjectively, the state actors involved must have acted in a deliberately indifferent manner. *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir.1991) (citation omitted).

Deliberate indifference implicates a higher degree of fault than negligence or even gross negligence. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted). An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496. The Supreme Court has explained the concept of deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See also Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) ("To be guilty of deliberate indifference, the defendant must know he is creating a substantial risk of bodily harm.") (internal quotation marks and citation omitted).

Although an Eighth Amendment claim regarding medical treatment generally concerns a medical professional's deliberate indifference in failing to treat a prisoner's serious medical condition properly, it may also arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Even if the official preventing treatment is a medical official, the Eighth Amendment may be violated if the professional "knows that his [or her] role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he [or she] delays or refuses to fulfill that . . . role due to deliberate indifference." *Id.* Causation is also a necessary element of a § 1983 claim of deliberate indifference. *Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982).

2. Failure to State Claim Against Defendant Fortunato

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim."). A defendant may not be held liable merely because of his or her supervisory position. *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A plaintiff must both allege in the complaint and prove at trial an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Benning has failed to plead sufficient facts to demonstrate that Defendant Fortunato had any personal participation in or any supervisory liability for the alleged violation of his constitutional rights. Mr. Benning's allegations against Defendant Fortunato are that he responded to his Step 2 grievance. (*See* doc. # 10 at p. 10 of 14; Mr. Benning's statements at September 15, 2008 hearing). Defendant Fortunato responded that "some hernias are cosmetic, some are not" and suggested that Mr. Benning submit a "kyte [request] to medical for possible re-eval[uation]." (*See* doc. # 10 at p. 10 of 14). Mr. Benning has not pled that Defendant Fortunato had any direct

contact with him or in any way caused or participated in the alleged constitutional violation. *See McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged constitutional violation); *see also* Mr. Benning's statements at September 15, 2008 hearing (acknowledging that Defendant Fortunato has never seen him in person)). Mr. Benning's allegations that Defendant Fortunato "was aware of the plaintiff's condition" (*see* doc. # 10 at p. 7 of 14 ¶ 34) are based solely on Defendant Fortunato's response to the Step 2 grievance. (*See* Mr. Benning's statements at September 15, 2008 hearing). Mr. Benning has not adequately alleged "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks and citations omitted). Without an allegation of direct responsibility for the alleged violations, Defendant Fortunato cannot be held liable for an alleged constitutional violation on the basis that he responded to a grievance. *See Larson v. Meek*, 240 Fed. Appx. 777, 780 (10th Cir. (Colo.) June 14, 2007) (Defendant's "denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations") (citation omitted).[5] As Mr. Benning has not alleged that Defendant Fortunato in any way caused or participated in the alleged constitutional violations, there is no basis for holding him individually liable under § 1983 and Defendant Fortunato is properly dismissed with prejudice from this civil action.

    3.    Failure to State Claim for Denial of Medical Treatment

Mr. Benning alleges that he suffered from a hernia and that Defendants denied

---

[5] A copy of this unpublished Order and Judgment is attached to this Recommendation.

him necessary hernia surgery and pain medication. (*See* doc. # 10 at pp. 3-7 of 14). As a hernia might be recognized as serious, the Amended Complaint contains sufficient factual allegations to support the objective component of an Eighth Amendment claim. *See, e.g., Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006) (holding that hernia may be objectively serious medical problem); *Jones v. Johnson*, 781 F.2d 769, 771-72 (9th Cir. 1986) (same).

According to his own allegations, Mr. Benning was immediately treated by medical personnel after experiencing a hernia. (*See* doc. # 10 at p. 5 of 14 ("on 8-7-06 while working in unit 1b as a porter at apprx. 7:50 a.m., I picked up a mop bucket with chemicals on top of it. I received a sharp pain . . . I immediately notified my boss . . . who in turn called medical services. I was scheduled a medical appoi[n]tment at 10:00 a.m. that morning.")). *See also* Mr. Benning's statement at September 15, 2008 hearing (that he was "seen by medical")). Mr. Benning alleges that he "should have been seen by a specialist" and that surgery was the proper course of treatment, rather than the advice and treatment that Defendants provided. (*See, e.g.,* doc. # 10 at p. 3 of 14 ¶ 4, p. 5 of 14 ¶ 15, Mr. Benning's statements at September 15, 2008 hearing (seeking surgery, acknowledging that he was prescribed a "gastric" or hernia "belt")).

What Mr. Benning alleges is a difference of opinion as to the adequacy of the treatment he received. Mr. Benning's allegation that he was denied hernia surgery raises nothing more than his disagreement as to when or whether hernia surgery should have been performed. Whether a course of treatment is appropriate "is a classic example of a matter for medical judgment," that is insufficient to sustain a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation). *See also Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to

serious medical needs"); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment"); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) (the Constitution does not guarantee a prisoner the treatment of his choice) (citations omitted); *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) (difference of medical opinion as to treatment of prisoner did not establish constitutional violation); *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation); *Henderson v. Secretary of Corrections*, 518 F.2d 694, 695 (10th Cir. 1975) ("The prisoner's right is to medical care -- not to the type or scope of medical care which he personally desires.") (internal quotation marks and citation omitted). Even if Mr. Benning had alleged that another physician would have recommended surgery, this would not serve to state an Eighth Amendment claim, as it would raise only a question of medical judgment and not deliberate indifference. Mr. Benning's disagreement with his medical treatment cannot form the basis for relief pursuant to § 1983.

To the extent that Mr. Benning alleges that the treatment he received was ineffective, such allegation does not rise beyond mere negligence. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Green*, 108 F.3d at 1303 (internal quotation marks and citation omitted). An allegation of medical negligence cannot form the basis for relief pursuant to § 1983.

Mr. Benning alleges that Defendant Rittenhouse was deliberately indifferent to his serious medical needs by "inform[ing] plaintiff in Sept. 06 that he would be referred to a surgeon to be evaluated for surgery . . . and this never did happen to my knowledge." (*See* Amended Complaint (doc. # 10) at p. 5 of 14 ¶ 17, p. 7 of 14 ¶ 35). The level required to make out a claim for deliberate indifference is "more blameworthy

than negligence," requiring "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835. Mr. Benning's allegation that "this to his knowledge was never done" does not imply that Defendant Rittenhouse knew that surgery was required yet refused to submit a request for surgical treatment. Further, Mr. Benning stated on the record at the September 15, 2008 hearing that a request for surgery was submitted and rejected. Mr. Benning's allegation is not sufficient to state a claim that Defendant Rittenhouse deliberately prevented his medical treatment. *See Sealock*, 218 F.3d at 1211.

Mr. Benning alleges that Defendant Webster violated his rights "by not even sending a request to the UMC or insurance carrier." (*See* Amended Complaint (doc. # 10) at p. 5 of 14 ¶ 16, p. 7 of 14 ¶ 33). In light of his failure to state an Eighth Amendment claim that he was entitled to surgery as treatment for his hernia and his statement at the September 15, 2008 hearing that a request for surgery was submitted and rejected, Mr. Benning consequently does not state a claim for deliberate indifference against Defendant Webster for failure to submit a claim for such surgery to an insurance carrier.

4.  Claim for Denial of Pain Medication

Mr. Benning further alleges generally that "defendants refused to provide adequate medication (or any for that matter). . . ." (*See* doc. # 10 at p. 6 of 14 ¶ 25). An allegation of denial of pain medication may form the basis for a deliberate indifference claim. *See Rivera v. Goord*, 119 F. Supp. 2d 327, 337 (S.D.N.Y. 2000) (plaintiff who alleged he suffered severe pain because defendant refused to provide him with pain medication stated a deliberate indifference claim). *See also Byrd v. Wilson*, 701 F.2d 592, 595 (6th Cir. 1983) ("a prisoner who suffers pain needlessly when relief is readily available had a cause of action against those whose deliberate indifference is

the cause of his suffering") (citation omitted).  While Mr. Benning's allegation is extremely bare, providing no information regarding specific dates or specific conduct, the court is constrained to deny dismissal pursuant to Rule 12(b)(6).

The court notes that the record before it does not show that Mr. Benning administratively exhausted a claim for denial of pain medication.  (*See* Mr. Benning's grievance documentation (doc. # 10 at pp. 9-12 of 14; doc. # 3 at pp. 10-14 of 20)). However, as exhaustion of administrative remedies is an affirmative defense that must be raised and proved by the defendant, *Jones v. Bock*, 549 U.S. 199 (2007), the court does not reach this issue at this stage of the litigation.  *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) ("only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse").

     5.    Conspiracy Claim

To the extent that Mr. Benning alleges that Defendants "all participated in civil conspiracy" pursuant to § 1983 (*see* Amended Complaint (doc. # 10) at p. 7 of 14 ¶ 32), his allegations are insufficient to state a claim.  *See, e.g., Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir.1990) ("[T]he rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.").  *See also Snell v. Tunnell*, 920 F.2d 673, 702 (10th Cir.1990) ("The participants in the conspiracy must share the general conspiratorial objective . . . [t]o demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] know[n] to each person who is to be held responsible for its consequences.") (internal quotation marks and citation omitted). The Amended Complaint contains nothing other than the most conclusory of allegations

as to the existence of a conspiracy. *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice."). To the extent that Mr. Benning is alleging a claim for conspiracy, such claim is properly dismissed with prejudice.

      6.    Qualified Immunity

Defendants raise the defense of qualified immunity. Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> When [a defendant] asserts a defense of qualified immunity, the plaintiff bears a heavy two-part burden. Initially, the plaintiff must show the [defendant]'s conduct violated a constitutional right: A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant]'s conduct violated a constitutional right? If the [defendant]'s conduct did not violate a constitutional right, the inquiry ends and the [defendant] is entitled to qualified immunity.

*Wilder*, 490 F.3d at 813 (internal quotation marks and citations omitted). *See also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (a court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.") (citation omitted); *Butler v. City of Prairie Village, Kansas*, 172 F.3d 736, 745 (10th Cir. 1999) (court "must first determine 'whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right' . . . If the plaintiff has asserted such a deprivation, *only then* do we inquire 'whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right' ") (citation omitted).

14

Mr. Benning's allegation that Defendants Webster and Rittenhouse withheld pain medicine may violate the "clearly established" right to be free from deliberate indifference to a serious medical need. *See Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (denial of prescribed pain medicine met general standard of liability under the Eighth Amendment for denial of medical treatment). Whether such conduct would be nonetheless "objectively reasonable" cannot be determined on a motion to dismiss. At this stage of the litigation, Defendants Webster and Rittenhouse are not entitled to qualified immunity on Mr. Benning's claim for denial of pain medication.

Accordingly,

IT IS RECOMMENDED that Defendants' Motion to Dismiss (filed July 11, 2008) (doc. # 30) and "Defendant Rittenhouse's Motion to Dismiss" (filed October 21, 2008) (doc. # 55) be DENIED IN PART insofar as Mr. Benning has minimally stated an Eighth Amendment claim against Defendants Webster and Rittenhouse with regard to the denial of pain medication and GRANTED IN PART, with regard to all other claims asserted and Defendants named in the Second Amended Complaint (doc. # 10 as modified by doc. # 12).

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely

and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 12th day of February, 2009.

BY THE COURT:

    s/Craig B. Shaffer  
United States Magistrate Judge